UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KEVIN O'HARA,

    Petitioner,

v.

BRANDON KELLY, Superintendent,
Oregon State Penitentiary

    Respondent.

Case No. 3:18-cv-01575-MC

OPINION AND ORDER

MCSHANE, District Judge:

Petitioner brings this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his state court convictions on grounds that he was denied the effective assistance of counsel. Petitioner fails to show that the Oregon court decision denying his claims unreasonably applied clearly established federal law. The Petition is DENIED.

BACKGROUND

In August 2010, after trial by jury, petitioner was convicted of Rape in the First Degree by forcible compulsion and Sexual Abuse in the First Degree. Resp't Ex. 101. The charges arose

1   - OPINION AND ORDER

from the rape and abuse of MS, a fourteen-year-old girl. The testimony supporting petitioner's convictions was recounted by the Oregon Court of Appeals, as follows:

> Defendant was a close friend of the victim's parents. The victim had known defendant since she was a young child, and she referred to him as "Uncle Kevin." In June 2002, when the victim was 14 years old, her parents took a long weekend trip and asked defendant to babysit the victim and her two younger brothers. Defendant stayed in one of the boys' bedrooms, which connected with the victim's bedroom through a shared bathroom.
>
> On that Saturday evening, after the victim's brothers had gone to bed, the victim and defendant watched television, and defendant asked the victim if she had ever had sex. He told the victim several times that she was beautiful, sexy, and very pretty. Defendant told the victim about having sex with his girlfriend and how she liked it. When a commercial for a phone sex line appeared on the television, defendant told the victim that he often called such numbers and pressed the victim to call the number. She refused and went upstairs to go to bed.
>
> Defendant later called the victim on her personal phone line to ask where the towels were in the shared bathroom. She told him where they were, but defendant asked her to bring him one. When she went into his room and set the towel on the bed, defendant grabbed her hand. Defendant told her she was pretty, beautiful, and sexy, put his hand on her stomach, and kissed her. Defendant continued to tell the victim that she was beautiful and sexy, kissed her and rubbed her stomach, and then moved his hand up to her breast. He then lifted up one of the victim's arms, while she lifted the other, in order to remove her shirt. The victim testified that she lifted her arm up because she was scared and did not know what to do. She was crying.
>
> Defendant touched her chest, kissed her neck and chest, and then pushed her onto the bed. She testified that,
>
>> "[h]e didn't shove me. I didn't think he was going to kill me, but he's over 200 pounds. I was closer to 100 or something. I mean, he had enough force and body weight to push me down."
>
> Defendant then pulled her shorts and underwear down, pulled his own shorts off, and had sexual intercourse with the victim. Defendant held the victim's wrists and forearms above her head, against the bed. He also touched her breast again. The victim was "crying and crying" and told defendant that she did not want to be there and that she "[did not] want this." The victim disclosed the incident to her parents several years later.

*State v. O'Hara*, 251 Or. App. 244, 245-46, 283 P.3d 396 (2012).

2   - OPINION AND ORDER

The jury found petitioner guilty of the charges by non-unanimous verdicts. Tr. 1363-64.[1] At sentencing, the trial court imposed concurrent sentences totaling 100 months of imprisonment. Resp't Ex. 101.

After an unsuccessful direct appeal, petitioner sought post-conviction relief (PCR) and raised claims asserting the ineffective assistance of trial counsel. Resp't Exs. 103-11. The PCR court denied relief, finding no deficient performance and no prejudice. Resp't Ex 140. The Court of Appeals affirmed in a written opinion addressing one claim, and the Supreme Court denied review. *O'Hara v. Premo*, 291 Or. App. 419, 421 P.3d 410, *rev. denied*, 363 Or. 390, 434 P.3d 29 (2018).

## DISCUSSION

In his federal Petition, petitioner asserts that his counsel was ineffective by 1) failing to call MS's friends to testify that she never told them about the rape, and 2) failing to object and move to for a curative instruction following improper closing arguments. Pet. at 3 (ECF No. 1). The PCR court denied both claims, and respondent maintains that its rulings are entitled to deference.

A federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority, or if it reaches a different result in a case with facts "materially indistinguishable" from relevant

---

[1] Petitioner sought to stay this action pending the decision of the Supreme Court of the United States in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). The motion was denied, because petitioner did not assert a non-unanimous jury claim in his Petition and briefing was complete on the grounds raised. Petitioner has not moved to amend his Petition to raise a claim under *Ramos*.

3     - OPINION AND ORDER

Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams,* 529 U.S. at 407-08, 413; *see also Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam) (state court decisions that are not "contrary to" clearly established Supreme Court law may be set aside only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or are based on 'an unreasonable determination of the facts'").

Under the well-established precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging the ineffective assistance of counsel must show that 1) "counsel's performance was deficient," and 2) counsel's "deficient performance prejudiced the defense." *Id.* at 687. To establish deficient performance, petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

  A. <u>Failure to Call Witnesses</u>

Petitioner first asserts that his counsel should have called five of MS's friends "to testify that she confided in them but never said a word about the alleged rape/sexual abuse incident." Pet. at 3.

In petitioner's PCR proceedings, petitioner's counsel explained their decision not to call MS's friends at trial:

4   - OPINION AND ORDER

> We did not call the complaining witness's close friends to testify that she confided in them but never said a word about the alleged rape/sexual abuse incident. Instead, we elicited the complaining witness's explanation during cross-examination that she did not tell these close friends because they would have spread the allegation around their school. We did so because we feared that if we called these friends, the state would ask them whether they believed that the complaining witness was a truthful person on cross examination. We wanted to avoid such cross-examination.

Resp't Ex. 114 ¶ 4; Resp't Ex. 115 ¶ 4. The PCR court accepted this explanation and rejected petitioner's claim. The PCR court explained, "Petitioner faults the trial attorney for not calling M's friends to say that M never told them of the rape. But M admitted that on the stand. It was in evidence and the attorney argued it fully. Why take any risk that one of the young women could say anything on direct or cross that could be harmful." Resp't Ex. 140 at 2. Petitioner fails to establish that the PCR court unreasonably applied *Strickland*.

In reviewing a claim under *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too…easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. In particular, courts must afford great deference to the strategic decisions of counsel, as "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

Here, the PCR court reasonably found that counsel made a strategic decision to rely on cross-examination rather than risk eliciting potentially unfavorable testimony from MS's friends. Indeed, MS's friends had told petitioner's counsel that they believed MS was "a truthful person." Resp't Ex. 130. Further, calling five of MS's friends to testify that she did not tell them about the rape would have been cumulative and unnecessary. During her direct examination, MS admitted that she did not disclose the rape to "a number of very close friends," because "high school

people tell people things" and she did not want other people to know she had been raped. Tr. 666. Based on this record, petitioner fails to show that counsel was deficient.

Likewise, petitioner fails to show prejudice. On cross-examination, counsel questioned MS extensively about the fact that she did not confide in her parents or her friends. Tr. 694-97. Counsel also emphasized this point during closing argument. Tr. 1307-08, 1328-29. Thus, the jury was well aware that MS did not tell anyone – even her closest friends – that petitioner had raped her.

As respondent notes, whether to question MS on cross-examination rather than call additional witnesses was a strategic choice within counsel's discretion. The PCR court afforded counsel the deference required by *Strickland*, and that deference was not unreasonable.

B.  Failure to Object to Closing Argument

Next, petitioner asserts that trial counsel should have moved to strike and sought curative action when, in closing argument, the prosecutor remarked that it is "very rare" for physical evidence to be produced in cases of non-stranger sexual assault and children often "act normally" after being abused. Pet. at 3. Petitioner contends that these comments were not supported by any evidence submitted at trial and constituted impermissible "expert" testimony.

The prosecutor made the challenged comments in rebuttal argument, after petitioner's counsel had repeatedly argued that no physical evidence – such as blood, semen, clothing, or sheets – corroborated MS's allegations. Tr. 1306-07, 1312. Counsel's closing argument also challenged MS's behavior after the assault, arguing that it was inconsistent with being raped. Tr. 1307-08, 1313-15. Counsel emphasized that she did not exhibit troubling behavior, she did not confide in her parents or friends, and she continued to hug petitioner when greeting him on occasion. Tr. 1308, 1314, 1328-29.

In rebuttal, the prosecutor argued, "The defense knows far better than to argue that there is no physical evidence, the State hasn't presented any physical evidence. This was in 2002. Sheets get washed. People grow out of clothing… Frankly, it's very rare that physical evidence is produced in cases of nonstranger sexual assault." Tr. 1335.

Petitioner's counsel objected to this argument, and the trial court stated, "Well, again, there is a little bit of latitude I give in closing argument, but obviously there was no evidence to that effect." Tr. 1336.

The prosecutor continued:

> And while defense counsel presents himself at the arbitor [sic] of what the people should or should not do and how all people act after a sexual assault, nothing is further from the truth.
>
> Children are abused by parents every day, the most awful, heinous types of abuse. People who are in authority, those children still love their parents. Those children don't run out to the police station. Those children act normally around their parents.
>
> For [MS] to act normally, to engage in contact with the defendant, is not inconsistent with how people act when they are abused by a person who is in authority.

Tr. at 1340-41. Petitioner's counsel did not object to this argument

The PCR court rejected petitioner's claim that counsel should have objected and sought curative instructions, finding that the "DA's comments during closing were not so egregious to be impermissible." Resp't Ex. 140 at 2. The PCR court explained:

> Each attorney tried to tell the jury how abused children behave and whether M's behavior was consistent with that norm. This court will assume the jury heard and followed the instructions that arguments are not evidence and that the jury made its own decision. The record would support an argument that the defense opened the door to the topic, so trial attorney would not have been likely to win that objection and would not have helped his cause in front of the jury.

Resp't Ex. 140 at 2. These findings were not unreasonable.

7    - OPINION AND ORDER

As an initial matter, counsel did, in fact, object to the prosecutor's argument that physical evidence is uncommon in cases of non-stranger rape. The objection was overruled, and petitioner cannot show deficient performance on this ground.

Counseled failed to object to the prosecutor's comments about abused children acting "normally," and petitioner maintains that competent counsel would have objected and moved to strike this impermissible argument. Petitioner argues that the PCR court's rejection of this claim was unreasonable, because it "conducted no legal analysis" and failed to consider counsel's admission that they should have sought curative action. Pet'r Br. at 15 (ECF No. 16). However, the only question before this Court is whether the PCR court's rejection of petitioner's claim was an objectively unreasonable application of *Strickland* – not whether the decision was "correct." *Schriro v. Landrigan*, 550 U.S. 465, 473, (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").

Here, the PCR court reasonably found that petitioner's closing argument arguably invited the prosecutor's comments by repeatedly challenging the lack of physical evidence and arguing MS's behavior was inconsistent with that of a rape victim. *Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (noting that "[m]uch of the [prosecutor's] objectionable content was invited by or was responsive to the opening summation of the defense" and was therefore less likely to affect the trial). Further, the PCR correctly noted that jurors were instructed that the attorney's arguments were not evidence and jurors should rely on their own memory of the evidence. Tr. 599-601, 628-29, 1270; *see Darden*, 477 U.S. at 182 (noting that the "trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence"). Given these findings, the PCR court

reasonably found no deficiency or prejudice arising from counsel's failure to object or seek a curative instruction.

On federal habeas review, a state court decision "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (explaining that a "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination"). Pursuant to this standard, the PCR court's decision was not an unreasonable application of *Strickland*.

## CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 11th day of August, 2020.

                                                  s/ Michael J. McShane
                                                  Michael J. McShane
                                                  United States District Judge